IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**WAYNE PATTERSON,**

       **Plaintiff,**

v.                                                **Case No. 2:12-cv-01964**

**CITY OF SOUTH CHARLESTON,
WEST VIRGINIA,
LT. R.T. YEAGER,
OFFICER T.A. BAILES,
OFFICER A.R. LINDELL, and
JOHN DOES 1-7,
individually and in their official
capacities,**

       **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

On June 11, 2012, the plaintiff, proceeding *pro se*, filed a civil rights complaint against the defendants, alleging that the defendants violated his constitutional and other civil rights in connection with his arrests on July 2, 2011 and September 7, 2011. (Complaint, ECF No. 2, at 1-2.)  This case arises out of siblings who were fighting over possession of their recently deceased mother's house.  Rather than seek appointment of an administrator of the intestate estate and division of the assets according to statute, the siblings and other relatives resorted to self-help, using law enforcement as leverage.

Pending before the court is the defendants' Motion to Dismiss (ECF No. 15), supported by exhibits and a memorandum (ECF No. 16).  By Order entered July 27, 2012 (ECF No. 17), the undersigned noted the provisions of Rule 12(d) and the requirement that the motion be treated as one for summary judgment.  The July 27,

2012 Order included a notice to the plaintiff pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). The plaintiff filed a response (ECF No. 18), supported by his affidavit (ECF No. 19). The defendants filed a reply (ECF No. 20), supported by an exhibit. On September 6, 2012, the plaintiff filed a supplemental affidavit with exhibits (ECF No. 22). The plaintiff's supplemental affidavit both reiterates facts from his first affidavit and adds new facts and documents. There are inconsistencies between the affidavits which the undersigned cannot resolve; the supplemental affidavit's version may be more internally consistent. Recently, the plaintiff's brother (George W. Patterson II), filed an affidavit, which has been considered (ECF No. 35).

## Summary Judgment Standard of Review

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable factfinder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary

judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## Background and Undisputed Facts

On March 26, 2011, Josephine Patterson died intestate, survived by four children named George Patterson, Alzerita Munlen, Gail Reid and Wayne Patterson. (Plaintiff's affidavit, ECF No. 19, ¶ 5, at 2; ECF No. 22, ¶ 8, at 2.) Wayne Patterson, the plaintiff, has a son named Wayne "Eros" Patterson, Jr., born February 14, 1998. (Complaint, ECF No. 2, ¶ 11, at 3.) Gail Reid has a daughter named Danaya Reid-Steiner, who is married to Joe Steiner. (*Id.* ¶ 15, at 4; ECF No. 19, ¶ 6, at 2.) It appears that as of the summer of 2011, no one had qualified as administrator of Josephine Patterson's estate. Josephine Patterson had owned real property, including a house, on Barrett Street in South Charleston, West Virginia. (ECF No. 2, ¶ 14, at 4; ECF No. 19, ¶ 5, at 2.)

According to a police report written by defendant Bailes, Gail Reid and Wayne and George Patterson were feuding over ownership rights to the house on Barrett Street. (ECF No. 20-1, at 10.) Officer Bailes was told that Danaya Reid-Steiner, Joe Steiner,

their children and Jaime Adkins moved into the house at the request of Gail Reid "because the property was not being taken care of." (*Id.*) There is no dispute that in June, 2011, Danaya Reid-Steiner and Joe Steiner entered the Josephine Patterson house ("the premises") and began to live there. (ECF No. 2, ¶ 15, at 4; ECF No. 19, ¶ 7, at 2.) The plaintiff alleges that the Steiners broke into the premises which the plaintiff had under lock and key. (*Id.*) The plaintiff states that within a day of the Steiners moving in, George Patterson learned that someone had broken into the premises. (ECF No. 19, ¶ 8, at 2; ECF No. 22, ¶ 11, at 2; ECF No. 35, ¶ 9, at 2.)

On the afternoon of Wednesday, June 29,[1] 2011, at approximately 3:30 p.m., Wayne Patterson, George Patterson and Eros Patterson (then 13 years old) met at a Go-Mart near the premises and contacted "Metro dispatch" for the purpose of requesting that an officer accompany them to the premises. (ECF No. 2, ¶ 17, at 4; ECF No. 19, ¶ 12, at 3.) At approximately 4:15 p.m., Wayne, George and Eros Patterson met South Charleston Police Officer A.R. Lindell at the premises. (ECF No. 2, ¶¶ 18-19, at 4-5; ECF No. 19, ¶¶ 13-14, at 3.) Wayne and George Patterson told Officer Lindell that they owned the premises and they were concerned that Gail Reid and the Steiners would try to get the Pattersons in trouble with the police or other authority. (ECF No. 22, ¶ 13, at 3; ECF No. 35, ¶ 16, at 3.) Wayne and George Patterson "assumed possession" of the premises, which the plaintiff describes as "our property." (*Id.*)

According to the plaintiff, Wayne, George and Eros Patterson and Officer Lindell entered the premises and observed messy, unsafe and unsanitary conditions, plus evidence of illicit drug use. (ECF No. 2, ¶ 22, at 5-6; ECF No. 19, ¶ 20, at 4; ECF No. 35,

---

[1] The Complaint alleges that the date was June 23, 2011; however, this appears to be an error.

¶ 18, at 3.)  Eros and Wayne Patterson took photographs of the scene.  (ECF No. 19, ¶ 22, at 4.)  At about 4:45 p.m., Officer Lindell left the area.  (*Id.*, ¶ 23, at 4-5.)  The defendants do not address the events between 4:15 p.m. and 4:45 p.m. on June 29, 2011, and there is no police report in the record concerning these allegations.

In the "late evening" of June 29, 2011, Danaya Steiner and Officer Lindell came to the premises so that Danaya Steiner could "get some of her stuff."  (ECF No. 22, ¶ 16, at 3.)  According to the plaintiff, Ms. Steiner pushed the plaintiff; she then asked Officer Lindell to arrest the plaintiff for pushing her.  (*Id.*)  The plaintiff quotes Officer Lindell as saying, "You both need to straighten up, you both were at fault."  (*Id.*)  Officer Lindell and Danaya Steiner left.  (*Id.*)  There is no police report in the record concerning these allegations.

According to the plaintiff, at 5:23 p.m., Gail Reid and Jaime T'Natelle Adkins arrived at the premises and an argument ensued.  (ECF No. 2, ¶ 25, at 6; ECF No. 19, ¶ 24, at 5.)  The plaintiff called the South Charleston Police Department and asked that officers return to the premises.  (ECF No. 2, ¶ 25, at 6; ECF No. 19, ¶ 25, at 5.)  These allegations are not mentioned in the supplemental affidavit.

According to the plaintiff, on July 1, 2011, at approximately 4:30 p.m., Lt. R.T. Yeager and other officers (the John Doe defendants) arrived at the premises and Lt. Yeager directed the Pattersons to vacate the premises, which they did.  (ECF No. 22, ¶¶ 17-18, at 3-4; ECF No. 35, ¶ 24, at 3.)  The plaintiff alleges that Gail Reid and Ms. Adkins told the officers that Wayne and George Patterson assaulted, hit and pushed them.  (ECF No. 2, ¶ 27, at 6; ECF No. 19, ¶ 26, at 5.)  Gail Reid and George and Wayne Patterson argued to the officers about their respective rights to the premises.  (ECF No.

5

19, ¶ 31, at 5.) At 5:55 p.m., the officers departed the premises. (ECF No. 2, ¶ 31, at 7; ECF No. 19, ¶ 33, at 6.) The defendants do not address the events between 4:30 p.m. and 5:55 p.m. and there is no police report in the record concerning these allegations.

On July 1, 2011, Wayne, George and Eros Patterson checked into the Travel Lodge in Dunbar, West Virginia. (ECF No. 2, ¶ 34, at 7; ECF No. 19, ¶ 43, at 7.)

Criminal Charges in Kanawha County Magistrate Court

On July 2, 2011, Jaime Adkins gave a written statement to Officer T.A. Bailes about the events on June 29, 2011. In his police report, Officer Bailes wrote the following:

> Jaime Adkins went home and found George and Wayne Patterson inside the residence. Jaime states that she was confronted by Wayne Patterson who shoved her with an open hand in the chest which forced her into a wall and almost caused her to fall. Jaime was holding a 9 month old baby at this time as well. As Jaime attempted to call 911 and flee the residence, she states that George Patterson picked up a baseball bat and presented it to her in a threatening manner and chased her out of the house.

(ECF No. 20-1, at 10.) Officer Bailes prepared and presented a criminal complaint which read as follows:

> [O]n 6-29-11 the victim (Jaime T. Adkins) arrived home at her residence of 825 Barrett Street in South Charleston, WV and was approached by the defendant (Wayne Patterson) who was shouting at her. The defendant then shoved the victim with an open hand in the chest while she was holding a 9 month baby in a baby carrier, which caused her to fall back into a wall.
>     As the victim attempted to dial 911 for help the co-defendant (George Patterson) took a wooden baseball bat, chased the victim outside and threatened her. The victim felt she was in reasonable apprehension of receiving an immediate violent injury by George Patterson's actions with a baseball bat.

(ECF No. 15-1, at 16; ECF No. 18-2, at 2.)

On July 2, 2011, Officer Bailes charged Wayne Patterson with battery (Case No. 11M-6104), and Kanawha County Magistrate Pete Lopez found probable cause. (*Id.*) An arrest warrant was issued. (ECF No. 15-1, at 17; ECF No. 18-3, at 1.) On July 2, 2011, Officer Bailes arrested the plaintiff at the Travel Lodge and transported the plaintiff and Eros Patterson to the South Charleston Police Department. (ECF No. 2, ¶¶ 36-37, at 7-8; ECF No. 19, ¶¶ 45-48, at 7-8.)[2] After processing and questioning the plaintiff, the police transported the plaintiff and Eros Patterson to Kanawha County Magistrate Court, where the plaintiff was released on $100 bond. (ECF No. 15-1, at 27; ECF No. 18-6, at 1.)

On July 4, 2011, Gail Reid gave a written statement to Officer Lindell about the events on June 29, 2011, which was added to Officer Bailes's police report.

> On July 4, 2011, Gail Reid came into the station to file a report about her brother pushing her during an altercation at 825 Barrett Street. According to Ms. Reid's written statement, the suspect Wayne Patterson was in an altercation with another woman when Ms. Reid went to her aid, Mr. Patterson grabbed Ms. Reid by the throat and pushed her down on a lounge chair. Ms. Reid further states that a laptop was on the chair and that her head struck it. Ms. Reid informed that she was filming the incident with an iPod and when she was pushed by Mr. Patterson it fell out of her hand. Ms. Reid went to reach for it, Mr. Patterson instructed his son to break it with the baseball bat that he was holding. The son whose name is Arrows [sic; Eros] then swung the bat at the iPod. While doing so the bat struck Ms. Reid's finger. Ms. Reid completed a written statement to this.

(ECF No. 20-1, at 10-11.) It appears that Ms. Reid's statement is provided at ECF No. 22, at 59. It reads as follows [spelling and punctuation corrected]:

> On Wednesday, June 29, 2011, I was told that there were people up in my mom's house at 825 Barrett Drive. My daughter and I had moved in the house about a week or so prior to this. We had a problem before

---

[2] It appears that George Patterson was also arrested, but the court has not been provided with those documents.

> with my brother's girlfriend trying to tell us we had to leave the property. She called the police. When they came and found out who was there, they told her she could not do anything to us because my mom had passed and she did not have a will so we had a right to be there. At that time, we asked the officer, "if my brother came up here starting trouble, do we have to let him in the house or can he just come in and make us leave?" He stated at that time that he could not [evict Reid], without going through the proper court. He said we in turn could not keep him out. At that time, we told the officer that my brother can be combative and [we] was told, if that happened, call the police and he would be asked to leave. He told us he would make an email stating that he cannot put us out without the proper channels. On June 29, when I went there, my brothers were in the house. I asked them how they got in without a key. They told us a policeman let them climb through a window. At that time, my grandson, who is 9 months, and his sitter, came through the door. My brother Wayne charged at her and told her she could not be in his house. At that time she said, "Don't push me; I got the baby in my hands." He said he didn't give a damn and keep pushing her. At that moment I told her to call the police and went to help her. My brother turned and grabbed me by my neck and pushed me down on the lounge chair where there was a laptop. My head hit it and I had a iPod in my hands because I was told to video any problems. When I fell my iPod dropped. When I tried to reach for it, my brother's son got a bat and his dad told him to break it. As I reached for it, his son swung and hit the tip of my finger and then crushed my iPod. While this was going on, the baby sitter had dispatch on the phone, telling her what [was] happening and please send police. Dispatch told her to stay on the line and I'm sure she could hear my brother calling her names and me, and she also told her his son had a bat. I got out of the house and so did the sitter. At that time I went to . . . Mrs. Hawkins's house, which has been a neighbor, and I told her to please call the police. "My brother just knocked me down and he pushed the sitter with the baby." She and [her?] brother came out to see if they could help me. They told us they had called the police also. When the police came, we were outside. I went back in the house and told the officer what had happened and I wanted to file a report. He told me to shut up – it was my fault because I was there illegally. I tried to show him the bat because it was still on the floor and where my iPod was but they had tried to clean up but there was still a piece of the glass. I was told to shut up and get out. The people behind my mother['s house] told us they heard what was going on and sa[w] the boy and my oldest brother with the bat. When my brother realized they were watching, he took the bat from my brother's 13 year old son.

(ECF No. 22, at 59.)  Officer Lindell prepared and presented a criminal complaint which

read as follows:

> On July 4, 2011 Gail Reid came into the station to file a report about her brother pushing her during an altercation at 825 Barrett Street South Charleston, WV Kanawha County. According to Ms. Reid's written statement, the suspect Wayne Patterson was in an altercation with another women [sic] when Ms. Reid went to her aid. Mr. Patterson then grabbed Ms. Reid by the throat and pushed her down on then [sic] lounge chair. Ms. Reid further states that a laptop was on the chair and that her head struck it. Mr. Reid completed a written statement to this.

(ECF No. 15-1, at 19; ECF No. 18-4, at 2.) On July 7, 2011, Officer Lindell charged Wayne Patterson with domestic battery (Case No. 11M-6041); Kanawha County Magistrate Traci C. Strickland found probable cause and issued a summons. (ECF No. 15-1, at 18; ECF No. 18-4, at 1.) There is no indication that the summons was served (the plaintiff is an Illinois resident). On August 10, 2011, Magistrate Strickland issued a warrant for the plaintiff's arrest. (ECF No. 15-1, at 20; ECF No. 18-5, at 1.)

On September 7, 2011, the plaintiff appeared for his trial on the battery charge, which was continued to November 15, 2011; the police arrested him on the domestic battery charge. (ECF No. 15-1, at 20, 27; ECF Nos. 18-6, at 1 and 18-5, at 1.) Trial on the domestic battery charge was scheduled for November 15, 2011. (ECF No. 15-1, at 24; ECF No. 18-7, at 1.)

On November 15, 2011, the plaintiff appeared and entered a Pre-Trial Diversion agreement with the State on the battery charge (Case No. 11M-6104), in which he agreed to have no contact with Jaime Adkins and Gail Reid for a period of six months, and to pay court costs of $160.00. (ECF No. 15-1, at 21-22; ECF No. 18-1, at 1-2.) Upon successful completion of the diversion period, the State agreed to dismiss both charges. (*Id.*) On May 22, 2012, both charges were dismissed. (ECF No. 15-1, at 23, 27; ECF Nos. 18-6, at 1 and 18-7, at 1.)

Domestic Charges in Kanawha County Family Court

The plaintiff has not filed in this court all the documents related to the various filings in Kanawha County Family Court. From the papers he has provided, it appears that three cases were filed.

On July 2, 2011, Danaya Steiner filed a domestic violence petition against the plaintiff, her uncle (Family Court No. 11-DV-1041), in which she alleged that on June 29, 2011:

> I was trying to get some of mine and my children's things together and I was walking past with an officer and Wayne Patterson was blocking my path and there were a bag of my things he was packing in the floor and as I step[p]ed over them the bag I was holding touched him and he took both hands and pushed me.

(ECF No. 22, at 12, 15, 19.) Kanawha County Magistrate Julie Yeager found that the "respondent has continued to threaten and harass petitioner and her family. Petitioner is fearful for her safety." (*Id.*, at 21.) Magistrate Yeager ordered the plaintiff to "refrain from abusing, harassing, stalking, threatening, intimidating or engaging in conduct that places Petitioner . . . in reasonable fear of bodily injury." (*Id.*) She further ordered the plaintiff to "refrain from contacting, telephoning, communicating with, harassing, or verbally abusing Petitioner," and "from entering any school, business, or place of employment of Petitioner." (*Id.*, at 22.) A final hearing on the petition was set to take place on July 11, 2011, before Family Court Judge Michael J. Kelly. (*Id.*, at 21.) On August 3, 2011, after a continuance, Family Court Judge Kelly conducted a hearing, denied a Domestic Violence Protective Order, and wrote that the "allegations do not rise to the level of domestic violence." (*Id.*, at 42.)

On an unknown date, Gail Reid filed a domestic violence petition against the plaintiff, her brother (Family Court No. 11-DV-1054). An Emergency Protective Order was issued on July 6, 2011, and continued in effect until a hearing on August 3, 2011, before Judge Kelly. (ECF No. 22, at 29.) On August 3, 2011, Judge Kelly denied a Domestic Violence Protective Order because Ms. Reid failed to appear. (*Id.*, at 39.)

On an unknown date, Gail Reid filed a domestic violence petition against "Arous" [sic; Eros] Patterson, her nephew (Family Court No. 11-DV-1055). An Emergency Protective Order was issued on July 6, 2011, and continued in effect until a hearing on August 3, 2011, before Judge Kelly. (*Id.*, at 33.) No disposition was provided.

Plaintiff's Causes of Action

The plaintiff filed his Complaint on June 11, 2012, making seven claims: federal false arrest, denial of equal protection (based on his race which is African American), common law false arrest, deprivation of rights pursuant to 42 U.S.C. § 1983, conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985, abuse of process, and malicious prosecution. (ECF No. 2, at 12-14.) He seeks compensatory damages, punitive damages, costs and other relief. (*Id.*, at 14.) In his Complaint, the plaintiff alleges that the police officers did not have reasonable grounds or probable cause to believe that the plaintiff committed the offenses with which he was charged. (ECF No. 2, ¶ 54, at 10.) He contends that the City of South Charleston's policies, customs and practices regarding arrest procedures, and its failure to train and supervise its officers adequately, were the moving forces behind the two arrests. (*Id.*, ¶¶ 50-51, at 9-10.) The plaintiff alleges that the City, Lt. Yeager and Officers Bailes and Lindell had an ulterior

motive based on the plaintiff's race when arrest warrants were obtained on July 2, 2011 and August 10, 2011. (*Id.*, ¶¶ 56-58, at 11-12.)

## Defense Arguments

The defendants contend that the plaintiff's Complaint fails to state a claim upon which relief can be granted, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009). They argue that the plaintiff's Complaint "simply reiterates conclusory statements in regard to each count without the support of factual allegations that would give rise to claims of unlawfulness or misconduct on behalf of Defendants." (ECF No. 16, at 5-6.) The defendants assert that the individual defendants are entitled to qualified immunity as they did not violate the plaintiff's constitutional rights when they arrested him under the authority of validly issued warrants. (*Id.*, at 6-9.) They contend that his claim for malicious prosecution must fail because the issuance of a valid warrant by an intermediary's independent decision breaks the chain of causation and grants the individual defendant officers immunity. (*Id.*, at 9-10.) The City of South Charleston argues that the plaintiff's claims against it should be dismissed because of the qualified immunity of the officers, because of the immunity provided by West Virginia Code § 29-12A-1 *et seq.*, and because the plaintiff's allegations of negligent training and supervision are unsupported by any facts. (*Id.*, at 10-13.) The defendants assert that the plaintiff's claim pursuant to 42 U.S.C. § 1985 should be dismissed as it does not meet the heightened pleading requirement of that statute. (*Id.*, at 13-15.)

In addition to his seven identified claims, the plaintiff's Complaint alleges that the defendants intentionally or recklessly inflicted humiliation, embarrassment and

emotional distress on him. (*Id.*, ¶ 52, at 10.) The defendants argue that all these claims should be dismissed for failure to allege any facts that would indicate he is entitled to relief and based on W. Va. Code § 29-12A-1 *et seq.* (ECF No. 16, at 15-17.)

Finally, the defendants contend that the plaintiff is not entitled to recover punitive damages pursuant to W. Va. Code § 29-12A-7, or attorney's fees (because he is not represented by an attorney). (*Id.*, at 18-19.)

### Plaintiff's Response

The plaintiff argues that he has pled facts that "allow a reasonable inference to be drawn that defendants are liable for the malicious conduct alleged." (ECF No. 18, at 8.)

### Analysis

The court will address each cause of action in turn. The court will view the facts in the light most favorable to the plaintiff, the party opposing dismissal with prejudice. There are some inconsistencies, particularly as to dates, between the factual allegations in the Complaint and those in the plaintiff's affidavits; it is doubtful that these inconsistencies are material.

### Failure to State a Claim Upon Which Relief Can Be Granted

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
> * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

The defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

### Qualified Immunity

Public officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. *Id.* If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. *Id.* "'The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct is unlawful in the situation he confronted.'" *Short v. Walls*, Slip Copy, 2009 WL 914085 *9 (S.D. W. Va. 2009)(quoting *Katz*, 533 U.S. at 202).

False Arrest/False Imprisonment/§ 1983

Allegations that an arrest was made without probable cause implicate the right to be free from unreasonable searches and seizures under the Fourth Amendment, and state a claim cognizable under § 1983. *See Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001); *Street v. Surdyka*, 492 F.2d 368 (4th Cir. 1974). The Supreme Court of the United States has held that:

> Whether that arrest was constitutionally valid depends in turn on whether, at the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

*Beck v. State of Ohio*, 379 U.S. 89, 91 (1964). The *Beck* Court further stated:

> When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would "warrant a man of reasonable caution in the belief" that an offense has been committed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L. Ed.2d 543. If the court is not

>informed of the facts upon which the arresting officers acted, it cannot properly discharge that function.

*Id.* at 96.

If a person is arrested pursuant to a facially valid warrant, a claim for false arrest (or for false imprisonment) fails as a matter of law. *See Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) ("a claim for false arrest may be considered only when no arrest warrant has been obtained"). As noted in *Porterfield,* the Supreme Court "has held that when a police officer acts pursuant to a warrant, he is entitled to qualified immunity if he could have reasonably believed that there was probable cause to support the application." *Id.* at 570 (citing *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) ("Only where the warrant application is so lacking indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost").

In *Porterfield*, the Fourth Circuit posed the question this way: "we must determine whether the sheriff's deputies were plainly incompetent or knowingly violated the Fourth Amendment in seeking a warrant to arrest Porterfield, [and] in arresting him . . .." 156 F.3d at 568. The court agreed with the defendants that they could not have committed a tort of false arrest because they were acting pursuant to a facially valid arrest warrant. *Id.* In *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996), the Fourth Circuit held that a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant.

The plaintiff contends that his "deprivation grew out of Defendants initiating action, causing the issuance of warrants which are the formal *instruments of prosecution* in this case." (ECF No. 18, at 9.) (Emphasis in the original.)

There is no dispute as to the genuineness of the complaints and warrants provided by the parties as exhibits to their submissions. Each warrant is signed by a Kanawha County magistrate with a finding of probable cause noted. The undersigned proposes that the presiding District Judge **FIND** that the warrants for the arrest of the plaintiff were valid on their face, were issued on the basis of complaints which included statements attributed to the alleged victims, and contained indicia of probable cause. The presiding District Judge should further **FIND** that the plaintiff's claims related to false arrest/false imprisonment fail as a matter of law and that the defendants are entitled to qualified immunity on those claims, based on the facially valid warrants.

Malicious Prosecution/Abuse of Process/§ 1983

"[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for a period after legal process issued, are analogous to the common-law tort of malicious prosecution." *Brooks*, 85 F.3d at 181-82. Therefore the issue, as stated in *Malley*, is whether the warrant application was so lacking indicia of probable cause as to render official belief in its existence unreasonable.

The plaintiff argues that defendants Lindell and Bailes "each participated in the decision to initiate criminal prosecution against Plaintiff without probable cause" and that he, the plaintiff, "has pled that Defendants had no probable cause." (ECF No. 18, at 11.) This is insufficient.

Careful review of the plaintiff's Complaint and his affidavit reveals that the defendant officers were not present at the time of the incidents involving Ms. Adkins and Ms. Reid. Assuming that the plaintiff's factual allegations are true, it can only be

17

said that the officers witnessed verbal disputes among the plaintiff, his brother, his sister and Ms. Adkins, but no conduct constituting battery. Both criminal complaints filed by defendants Lindell and Bailes were based on statements made by Ms. Adkins and Ms. Reid when they came to the South Charleston Police Department to report their version of the plaintiff's actions on June 29, 2011, at times when the police were not present at the premises. The plaintiff's conclusory assertion that the police lacked probable cause is contradicted by the content of the criminal complaints. Moreover, the defendant officers had themselves witnessed the siblings feuding over the property.

The undersigned proposes that the presiding District Judge **FIND** that the witnesses' statements provided sufficient probable cause such that the defendant officers reasonably believed that the plaintiff had committed battery and domestic battery.

### Conspiracy/Equal Protection/State Law Claims

It appears that the plaintiff's conspiracy claim is based on West Virginia law and is dependent upon a finding that the defendant officers knew that they lacked probable cause to arrest the plaintiff and had an unlawful agreement to arrest him anyway because he is African American. There is no evidence in any of the exhibits, other than the plaintiff's conclusory allegations, that the defendant officers took any action with respect to any of the participants on the basis of race. The undersigned proposes that the presiding District Judge **FIND** that there is no basis in the plaintiff's Complaint of a conspiracy to violate the plaintiff's civil rights on the basis of his race, or for any other reason. The plaintiff's references to humiliation, embarrassment and emotional distress

appear to be descriptions of his feelings about the events, rather than specific claims for relief, and they do not merit further discussion.

## Qualified Immunity

In light of the foregoing proposed findings that the officers had probable cause to file criminal complaints and to obtain warrants, the undersigned proposes that the presiding District Judge **FIND** that the officers' conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. Other than his conclusory statements that the officers took certain actions out of discriminatory animus, the plaintiff has provided no evidence that the officers knowingly violated the law. If there is fault to be found, it is that of the siblings who have squabbled over their mother's property and failed to use existing statutes and governmental agencies to settle their mother's estate.

## Recommendation

It is respectfully **RECOMMENDED** that the defendants' Motion to Dismiss (ECF No. 15) be granted and this action stricken from the docket.

## Notice

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed

Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff, and to transmit it to counsel of record.

October 30, 2012

Mary E. Stanley
United States Magistrate Judge