```
              UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                     CHARLESTON DIVISION
```

**WAYNE PATTERSON,**

    Plaintiff,

v.                                    Civil Action No: 2:12-1964

**LIEUTENANT R.T. YEAGER,**
individually and in his official
capacity, South Charleston Police,
**JOHN DOE 1-7,**
individually and in their official
capacities,

    Defendants.

<u>ORDER</u>

Pending is the plaintiff's Rule 60(b) Motion for Relief from Summary Judgment Order, filed March 4, 2014. The motion was referred to Dwane L. Tinsley, United States Magistrate Judge, who submitted his Proposed Findings and Recommendation ("PF&R") on March 4, 2015. Neither the named defendant nor the plaintiff, Wayne Patterson, has objected to the PF&R, which recommends that Patterson's motion be denied.

As the court has previously explained, the dispute in this case arises out of a family feud over a house located in South Charleston that is owned in common by Patterson and his siblings, including Patterson's sister, Gail Reid. In the

summer of 2011, Patterson, along with his son and brother, George, (the "Patterson group"), attempted to evict those living in the house, including Reid's daughter, Danaya Reid-Steiner, Steiner's husband, their child, and Jamie Adkins (the "Reid group"). At various points throughout the day on June 29, 2011, the Patterson group feuded with members of the Reid group. On July 1, 2011, officers from the South Charleston Police Department ("SCPD") directed the Patterson group to vacate the premises, which they did.

On July 2, 2011, Adkins made a statement to Officer Bailes of the SCPD, alleging that Patterson pushed her (while she was holding an infant child) during the tumult of June 29, 2011. Officer Bailes prepared a criminal complaint charging Patterson with battery, Kanawha County Magistrate Pete Lopez found probable cause to issue an arrest warrant, and Patterson was arrested on July 2, 2011. On July 4, 2011, Reid gave a statement to Officer Lindell of the SCPD also alleging battery against Patterson. Lindell prepared a complaint, Magistrate Traci C. Strickland found probable cause, and later issued a warrant for Patterson's arrest on August 10, 2011. Patterson was arrested on that charge on September 7, 2011.

On June 11, 2012, Patterson initiated this action asserting several common law causes of action and claims under

2

42 U.S.C. §§ 1983 and 1985.  The essence of his complaint was that his arrests were unlawful and unconstitutional inasmuch as the officers lacked probable cause to arrest him and instead conspired to arrest him anyway because he is African American.  The defendants, which at that time included the City of South Charleston and Officers Bailes and Lindell, moved to dismiss.  The motion was referred to Magistrate Judge Mary E. Stanley, who converted the motion into one for summary judgment.  Magistrate Judge Stanley ultimately recommended that Patterson's claims -- variously styled as false arrest, false imprisonment, malicious prosecution, abuse of process, and conspiracy -- all failed because the uncontroverted evidence in the record demonstrated that there was probable cause to charge and arrest Patterson, and because no evidence suggested that the officers were motivated by Patterson's race.  Patterson objected, but the court adopted Judge Stanley's recommendation, granting judgment in favor of the City, and Officers Bailes and Lindell.

Patterson has now moved for Rule 60 relief from that judgment.  The basis for his motion is a letter, written by Jamie Adkins, that was included in a supplemental response to discovery requests provided by one of the remaining defendants, Lieutenant Yeager.  The letter, which is undated and addressed "To whom it may concern", contains Adkins' account of the events

3

of June 29, 2011 and the subsequent days, culminating with her decision to make a statement against Patterson. To summarize briefly, the letter states, <u>inter alia</u>, that:

- Adkins arrived at the property on June 29, 2011, saw vehicles she did not recognize as well as an SCPD cruiser, left to pick up Reid, returned, and encountered the Patterson group;

- Patterson shoved her while she was holding a nine-and-one-half-month-old child and also shoved Reid, who fell over a chaise lounge;

- Adkins called the police and three SCPD officers, including Lindell, arrived;

- The officers spoke with the Patterson group and then told Adkins that she could not enter the house because she was not "family," but agreed to accompany her inside so that she could collect her belongings;

- After leaving the premises Adkins went to the SCPD to file charges, but Officer Lindell actively discouraged her from doing so and in fact threatened that Adkins herself could be charged with drug possession because papers containing what the police believed to be marijuana were observed in an ashtray at the property;

- Adkins declined to press charges at that time after Lindell suggested that she "drop it" because she "wasn't 'really hurt'" and "could potentially lose her [teaching] job for a drug charge";

- On July 1, 2011 Adkins received a call from Danaya Reid-Steiner informing her that the SCPD would allow them back onto the property, and asking Adkins to come to the SCPD station at 3:00 p.m.;

- Adkins returned to the property and observed that many of her possessions were missing, damaged, or destroyed;

- Adkins immediately returned to the SCPD station, intending to press charges, and observed what she believed to be Patterson's van in the parking lot;

4

- Lt. Yeager stopped the van and he and Officer Bailes asked for consent to search the van, which Patterson provided;

- The search revealed a suitcase which Adkins was able to identify by its markings and which Patterson incorrectly identified;

- Lt. Yeager directed the Patterson group to return the suitcase to Adkins;

- Adkins again sought to press charges over the theft, but was told by the duty officer (who is not identified) that her claim was "chicken sh-t";

- On July 2, 2011, Adkins returned to the station and again spoke with Lt. Yeager and Officer Bailes about the events beginning on June 29, 2011;

- The officers "agreed that things were mishandled" and "agreed that they had to do something";

- More specifically, Lt. Yeager said that he had discussed the situation with his sister, Kanawha County Magistrate Julie Yeager, who revealed that she had previously informed Patterson of the proper legal mechanism for evicting the Reid group, but Patterson "evidently did not like that answer" and instead told the SCPD that the Reid group was squatting at the property, which led to Adkins (among others) being excluded from the property on June 29, 2011;

- Bailes "decided he would have [Adkins] write a separate statement about being pushed at against the wall with the baby";

- Lt. Yeager stated that Officer Lindell could be charged for pressuring Adkins not to press charges on June 29, 2011 and characterized the SCPD's performance as a "cluster-f--k of a job".

Patterson alleges that Adkins has a financial motivation (namely, remaining at the property) to lie about him, but he states that he "believes the statements contained in the

5

Adkins letter to be true and correct." He asserts that the letter "supports [his] specific § 1983 and constitutional claims," and that he is entitled to relief under Federal Rule of Civil Procedure 60(b)(2) (newly discovered evidence) and (b)(3) (fraud).[1]

The magistrate judge persuasively recommends that the motion be denied. First, under Rule 60(b)(3), the party moving for relief from judgment must (1) have a meritorious defense; (2) prove misconduct on the part of the adverse party by clear and convincing evidence; and (3) show that the misconduct prevented the moving party from fully and fairly presenting its case. Schultz v. Butcher, 24 F.3d 626, 630 (4th Cir. 1994). In his PF&R, Judge Tinsley observed that Judge Stanley stayed discovery in this case on September 27, 2012, and reiterated the stay in a second order on October 24, 2012, pending the resolution of the motion to dismiss (which she had converted to a motion for summary judgment). The stay was not lifted until April 23, 2013, after this court, adopting Judge Stanley's PF&R, granted judgment in favor of the City and Officers Bailes and Lindell. As a result, Judge Tinsley observed that those defendants were under no obligation to disclose the Adkins letter and had not engaged in misconduct by withholding it.

---

[1] Patterson's motion also briefly mentions Rule 60(b)(6), but no argument for the application of that provision is developed.

6

Second, under Rule 60(b)(2), the moving party must show (1) evidence newly discovered since the judgment was entered; (2) that due diligence on the part of the movant has been exercised; (3) that the evidence is not merely cumulative or impeaching; (4) that the evidence is material; and (5) that the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended. Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989). Judge Tinsley concluded that the Adkins letter would not require the judgment to be amended or produce a new outcome, and for good reason: As he explained, "the plaintiff's claims of false arrest, malicious prosecution, abuse of process, denial of equal protection, deprivation of rights pursuant to 42 U.S.C. § 1983 and conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 were all dismissed based upon the . . . findings . . . that there was probable cause for the plaintiff's arrests, and that the plaintiff had not sufficiently demonstrated that the defendants' conduct was racially motivated," and "nothing in the Adkins Letter [] would change those findings." PF&R at 15-16.

Quite so. The contents of the letter do not create any genuine dispute of material fact that would in any way undercut Judge Stanley's previous finding that the warrants for

7

Patterson's arrests were supported by probable cause, nor does the letter in any way suggest that Officers Bailes and Lindell were motivated by any racial animus towards Patterson. Indeed, Adkins' description of Patterson's conduct on June 29, 2011 precisely echoes the allegations that led two separate Kanawha County Magistrates to conclude that probable cause existed to arrest Patterson for battery, and her account at no point mentions Patterson's race.

Patterson argues that the letter somehow constitutes evidence that "Bailes went before a magistrate judge, [and] swore to what he [knew] was a false claim, [and] got a warrant based on the false statement he had asked Adkins to write[.]" But the letter simply would not allow any reasonable juror to draw that inference. Nothing in the letter suggests that Adkins' account of the events of June 29, 2011 was false or coerced by Officer Bailes. That Lt. Yeager and Officer Bailes agreed to "do something" and took Adkins' statement -- rather than coercing her into declining to press charges as Officer Lindell allegedly did -- does not begin to suggest that Adkins' statement was concocted at their behest. On the contrary, the letter makes clear that Adkins returned to the SCPD station on July 2, 2011 of her own volition, intent on filing charges after being previously rebuffed by Officer Lindell.

8

Accordingly, having received the Proposed Findings and Recommendation submitted on March 4, 2015 by United States Magistrate Judge Dwane L. Tinsley; and there being no objections to the PF&R filed by either the defendants or the plaintiff; it is ORDERED: (1) that the PF&R of the magistrate judge be, and hereby is, adopted by the court and incorporated herein; and (2) that the plaintiff's Rule 60(b) Motion for Relief from Summary Judgment Order (ECF No. 146) be, and hereby is, denied.

The Clerk is requested to transmit a copy of this order to all counsel of record, to Magistrate Judge Tinsley, and to the plaintiff, by certified mail, at 205 Saratoga Road, Normal, Illinois, 61761.

ENTER: March 27, 2015

John T. Copenhaver, Jr.
United States District Judge