# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**WAYNE PATTERSON,**

      **Plaintiff,**

**v.**                                        **Case No. 2:12-cv-01964**

**LT. R.T. YEAGER and JOHN DOES 1-7,**
**individually and in their official capacities,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter, which is presently proceeding on limited claims as stated in the plaintiff's First Amended Complaint (ECF No. 41), is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## RELEVANT PROCEDURAL HISTORY

The plaintiff's initial Complaint (ECF No. 2) dealt exclusively with claims related to the plaintiff's arrests and the pursuit of criminal charges against the plaintiff for battery and domestic battery, which the plaintiff alleged were motivated by his race and made without probable cause.  The claims in the initial Complaint did not in any way directly address the defendants' entry onto the property at 825 Barrett Street, or the plaintiff's ejection therefrom, on July 1, 2011.  The initial Complaint named the City of South Charleston, Lieutenant R.T. Yeager, Officer T.A. Bailes, Officer A.R. Lindell and seven John Doe officers as defendants.

In particular, the initial Complaint alleged claims of federal false arrest, denial of equal protection, common law false arrest, deprivation of rights pursuant to 42 U.S.C. § 1983 (alleging that the plaintiff's "false arrest" violated the Fourth Amendment), conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 (alleging that the plaintiff's "false arrest" violated the Fourth and Fourteenth Amendments), abuse of process (again alleging that the plaintiff's "false arrest" violated the Fourth and Fourteenth Amendments), and malicious prosecution (alleging that the plaintiff's "false arrest . . . manifests a malicious prosecution" in violation of the Fourth and Fourteenth Amendments).  The initial Complaint also specifically alleged that the City of South Charleston "was negligent in allowing policies and practices that support the illegal conduct to continue and damage Plaintiff."  (*Id.* at 3).

On October 30, 2012, United States Magistrate Judge Mary E. Stanley submitted a Proposed Findings and Recommendation ("10/30/12 PF&R") recommending that all of the plaintiff's claims in his initial Complaint be summarily dismissed.  (ECF No. 36). The basis of Judge Stanley's proposed ruling is that two independent Kanawha County magistrates had found probable cause to arrest the plaintiff, and that all of the claims contained in the plaintiff's initial Complaint were dependent upon a finding of a lack of probable cause.

Following the entry of the PF&R, on November 5, 2012, the plaintiff moved for leave to amend his Complaint, and attached a proposed First Amended Complaint and Demand for Jury Trial.  (ECF No. 37).[1]  The First Amended Complaint did not name any new defendants.  In addition to re-alleging the specific facts and claims related to his

---

[1]   On November 16, 2012, the plaintiff also filed separate Objections to Magistrate Judge Stanley's 10/30/12 PF&R (ECF No. 39).

arrests and criminal prosecutions, the First Amended Complaint attempted to raise, for the first time, claims of "common law fraud," "civil conversion," and "civil trespass." The First Amended Complaint also added facts and allegations concerning the entry by South Charleston police officers onto the property at 825 Barrett Street on July 1, 2011, and the subsequent ejection of the plaintiff from the property on that same date.

On March 29, 2013, Judge Copenhaver entered a Memorandum Opinion and Order (ECF No. 40) in which he adopted Magistrate Judge Stanley's 10/30/12 PF&R and granted the defendants' Motion to Dismiss (ECF No. 15), which was treated as a Motion for Summary Judgment. Judge Copenhaver's Memorandum Opinion and Order also addressed the claims set forth in the plaintiff's proposed First Amended Complaint (ECF No. 37, Attach. 1), and found that the proposed Amended Complaint did not contain any new facts or allegations that would alter the court's decision granting summary judgment on the claims in the original Complaint and re-asserted in the proposed Amended Complaint. The Court's Order further found that all of the new claims contained therein, except for a claim of "civil trespass," failed to state a claim upon which relief can be granted, and that allowing such amendments would be futile. Thus, his Memorandum Opinion and Order dismissed all of the claims against the City of South Charleston, Officer T.A. Bailes, and Officer A.R. Lindell, but granted the Motion for Leave to Amend to permit the plaintiff to pursue only the "civil trespass" claim against Lt. R.T. Yeager and seven John Doe defendants. Accordingly, this matter proceeded only on the plaintiff's allegations contained in his civil trespass counts against defendants Yeager and the John Does.

On October 1, 2013, the undersigned conducted a status conference in this matter during which the issue of whether this court has subject matter jurisdiction over the

plaintiff's claims was addressed.  The plaintiff asserted that his claims are grounded, in part, in the guarantees provided by the Fourth and Fourteenth Amendments to the United Stated Constitution and, thus, the court's federal question jurisdiction under 28 U.S.C. § 1331 is satisfied.  The defendants disputed the federal question basis for jurisdiction, but asserted that jurisdiction in this federal court would, nonetheless, be appropriate because the parties are citizens of different states and, presumably, the amount in controversy exceeds $75,000, which satisfies the jurisdictional requirements stated in 28 U.S.C. § 1332.  The parties were granted an opportunity to brief the federal question issue.  Those briefs will be discussed in detail in section A *infra*.

On September 15, 2014, the plaintiff filed another Motion for Leave to Amend Complaint (ECF No. 153) and attached a proposed (Revised) Second Amended Complaint and Demand for Jury Trial (hereinafter "proposed Second Amended Complaint").  The parties have fully briefed the matter of whether any additional amendments to the Complaint are appropriate, as discussed in detail in section B *infra.*

## DISCUSSION AND ANALYSIS

### A.    Subject Matter Jurisdiction.

On December 11, 2013, the plaintiff filed a "Brief in Support of Whether Plaintiff Has Raised a Question of Federal Law." (ECF No. 129).  In that brief, the plaintiff asserts that, on July 1, 2011, when defendant Yeager and others entered the house at 825 Barrett Street, "Patterson was inside his house with the door closed, and had a reasonable expectation of privacy as it pertains to the Fourth Amendment."  (*Id.* at 2).  The plaintiff further asserts that the Fourth Amendment guarantees that "certain enclaves should be free from arbitrary government interference."  (*Id., citing Oliver v. United States*, 466 U.S. 170, 173 (1984)).

4

The plaintiff's brief further contends that:

> On July 1, 2011, Lt. Yeager became involved with the issue regarding possession of Patterson's house and Lt. Yeager "simply decided to humiliate, dispossess, and eject Patterson from the premises without probable cause or due process. On July 1, 2011, Lt. Yeager personally participated as the shift supervisor and ordered his subordinates to meet at Patterson's house for the purpose of ejecting Patterson. On July 1, 2011, Lt. Yeager established an affirmative link to Patterson's alleged deprivations when he drove to Patterson's house in a police car and ejected Patterson.

(*Id.* at 3).

The plaintiff's brief also cites to an excerpt from an undated letter authored by Jamie Adkins (hereinafter "the Adkins letter"), one of the persons involved in the dispute over the possession of the house on June 29, 2011 and July 1, 2011, and the alleged victim of the plaintiff's battery charge. The plaintiff's brief states:

> The Adkins letter explains Lt. Yeager's actions on July 1, 2011, as Jaime Adkins saw them on that day. The Adkins letter states as follows on page 3, ¶4:

>> "*We met Lt. Yeager at the station. He stated that we were going to be let back in the house and that he had two other officers waiting to meet us on Allview Drive near Barrett Street. We left the station and met the officers in a lot around the corner from the house. Lt. Yeager arrived a few minutes later and we all caravanned back to 825 Barrett Street. I stayed outside as the officers entered the house. The three men [were] removed from the house and Joe and Danaya Steiner, and I were given possession of the home and our property again and the officers left.*" (sic) (Emphasis added.)

> The right to be free from unreasonable searches and seizures originates in the Fourth Amendment and is applied to the states through the Fourteenth Amendment due process clause.

> * * *

> On July 1, 2011, the Defendants took illegal unsupported police actions against Patterson when they entered Patterson's house without a warrant and without permission, and then seized Patterson's house and

property.   Defendants' July 1, 2011 ejection and seizure was "unreasonable," not permissible under law, and was without probable cause.   The textual "touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967)).

(*Id.* at 4).[2]

On December 30, 2013, the defendants filed a Response to the plaintiff's jurisdictional brief.   (ECF No. 133).   The Response disputes the plaintiff's contention that he has sufficiently raised federal constitutional claims.   The defendants contend:

In Plaintiff's *Brief in Support of Whether Plaintiff Has Raised a Question of Federal* Law, (the "Brief"), Plaintiff devotes the bulk of his Argument (Parts A through E) arguing that this action should remain in federal court as it includes federal question claims, i.e., that the Defendants entered upon the subject property in violation of Plaintiff's rights afforded by the 4th and 14th Amendments of the United States Constitution.   However, this action does **not** include such claims.   Indeed, Plaintiff's original Complaint did not set forth such claims, *see Complaint*, attached hereto as **Exhibit 1**, and, in any event, Plaintiff's original Complaint was dismissed by Judge Copenhaver in Judge Copenhaver's Memorandum Opinion and Order. *See* Memorandum Opinion and Order, 14, ECF No. 40.

Moreover, and importantly, while Plaintiff's proposed Amended Complaint *did* set forth claims that his property was "converted" in violation of the 4th and 14th Amendments of the United States Constitution, *see Amended Complaint*, ¶¶ 144, 165, 186, 207, 228, 249, 270, 291, 312, 333 and 354, ECF No. 41, such claims were **not** allowed to go forward following Plaintiff's Motion and Memorandum of Law in Support of Leave to Amend Complaint.   On the contrary, in Judge Copenhaver's Memorandum Opinion and Order, Judge Copenhaver expressly ordered that "the plaintiff's motion to amend his complaint is granted with respect to the trespass claim **and otherwise denied** . . . [t]his action shall proceed **only on the basis of the trespass claim** set forth [in Plaintiff's Amended Complaint]."   ECF No. 40, 14 (emphasis added).   Thus, Plaintiff's arguments concerning alleged violations of Plaintiff's rights under the 4th and 14th Amendments of the U.S. Constitution need not be addressed here.

---

[2]      The plaintiff's brief also asserts that the defendants' conduct constituted a conspiracy to falsely arrest the plaintiff.   However, as addressed below, any claims related to the plaintiff's arrest and prosecution have been definitively dismissed by the presiding District Judge based upon the fact that two different magistrates found probable cause to support the plaintiff's arrests.   Thus, the plaintiff's attempts to resurrect such claims as a basis for federal question jurisdiction must fail.

(ECF No. 133 at 2).

The defendants' Response further contends that, because the plaintiff's state law civil trespass claim is the only remaining claim, the plaintiff has no available remedy in this court.  Rather, the defendants contend that the plaintiff's only remedy lies in an adjudication of the rights of the plaintiff and his co-tenants in common to the subject property via the procedures of an action in ejectment and/or partition, which are only available in the state courts.  (*Id.* at 5-8).  The Response further states:

> Because Plaintiff refused to use the civil court system and properly and legally resolve the conflict over the subject property, these Defendants had no choice but to remove Plaintiff from the subject property after Plaintiff had attempted to evict the other tenants in common with a baseball bat. At the same time, these Defendants advised Plaintiff to go through the proper channels to establish his possessory rights to the subject property. Thus, there is no basis for Plaintiff's civil trespass claim.  Furthermore, even if Plaintiff was successful in all other aspects of proving his civil trespass claim, he would be without a remedy as Plaintiff's success in the instant action would not result in the taking away possession of the subject property from the other tenants in common and delivering possession of the subject property to Plaintiff.  In order to gain possession of the subject property, Plaintiff, as Defendants advised from the beginning, would still have to file a separate action for ejectment and/or an action for partition against his co-tenants.  As a result of the foregoing, these Defendants do not believe Plaintiff's civil trespass claim should be heard in any court, as there is no basis or cognizable remedy for the same.

(*Id.* at 8).

On January 14, 2014, the plaintiff filed a Reply brief.  (ECF No. 135).  The Reply asserts that, when he was ordered to vacate the premises at 825 Barrett Street, Lt. Yeager warned the plaintiff "Don't come back."  The plaintiff further asserts that "to this date, he has not been able to return because of the threats from the police" and that he "has not received any money or compensation for the City's continuing control of Patterson's house."  (*Id.* at 2).

The Reply (*id.* at 3) further emphasizes that Judge Copenhaver's March 29, 2013 Memorandum Opinion and Order stated that "the defendants suggest no legal basis for their entry onto the plaintiff's property or for his subsequent ejection." (*see* ECF No. 40 at 13). The plaintiff further asserts that "the defendants are unable to 'suggest' a legal basis because there is none" and the plaintiff contends that his "unlawful ejection is an absolute violation under the fourth and fourteenth amendments and should be addressed by this court." (ECF No. 135 at 3). The plaintiff further attempts to bolster his assertion that the conduct of the defendants was racially motivated, claiming that "[i]f Police officer defendants were impartial, they would have instructed Danaya, Joe and Adkins to 'use the civil court system . . .' (p 8 ¶3) But Defendant police officers are not impartial, and overtly intervened on behalf of Jaime Adkins, a Caucasian female." (*Id.* at 3).

The plaintiff's Reply further contends as follows:

> Judge Copenhaver's March 29, 2013, order p13, states in part as follows: "<u>Therefore the plaintiff has established a plausible claim that the defendants entered his property without lawful authority.</u>" Because the Defendants are all police officers, the court's finding describes a circumstance that is a legal violation of the fourth and fourteenth amendments. The individuals and police officers entering Patterson's house and ejecting Patterson without legal authority is manifest of evil intent, incompetence and negligence. Patterson is entitled to competent unbigoted police service and officers who know the law well enough to protect the public and to not negligently damage Patterson. The city is solely responsible for the neglect and incompetent acts of its police supervisors and police officers.

(*Id.* at 4).

The "civil trespass" counts against defendants Yeager and the John Does in the plaintiff's First Amended Complaint assert that Lt. Yeager and the John Doe Defendants "forcibly, maliciously, unlawfully, and without legal authority trespassed upon

Patterson's property <u>in violation of the 4th and 14th Amendments of the United States Constitution</u> . . . ."  (ECF No. 41, ¶¶  167, 230, 251, 272, 293, 314, 335 and 356) [Emphasis added].  The defendants overlooked this wording when addressing those claims in their Response brief.  The defendants also appear to have overlooked that monetary damages are recoverable in both civil trespass actions and claims brought under section 1983, and that the plaintiff's "Prayer for Relief" seeks such damages.  The defendants' prior acknowledgment that the case meets the diversity of citizenship criteria further supports a finding that monetary damages may be an appropriate form of relief herein.

The undersigned proposes that the presiding District Judge **FIND** that the remaining allegations in the plaintiff's First Amended Complaint, as expanded upon in his briefs concerning jurisdiction discussed above, and in certain allegations pled in the proposed Second Amended Complaint, which will be discussed below, sufficiently state claims under the Fourth and Fourteenth Amendments, which give rise to a basis for the court's subject matter jurisdiction under the federal question provision in 28 U.S.C. § 1331.  Moreover, the defendants do not appear to contest that the plaintiff's allegations also meet the criteria for subject matter jurisdiction based upon diversity of citizenship.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that this federal court has subject matter jurisdiction over the plaintiff's claims.

### B.    Motion for Leave to Amend First Amended Complaint.

On September 15, 2014, the plaintiff filed a Motion to Amend First Amended Complaint (ECF No. 153), with which he submitted an excessively lengthy 195-page proposed Second Amended Complaint, naming 24 defendants.  Specifically, three of those proposed defendants, the City of South Charleston, Officer T.A. Bailes and Officer

A.R. Lindell, have already been granted summary judgment on the seven claims raised in the plaintiff's initial Complaint (which will be further addressed *infra*). Another defendant, Lt. R.T. Yeager, is the only presently-identified defendant named in the First Amended Complaint upon which this matter is now proceeding. The proposed Second Amended Complaint also names, for the first time, the following new defendants: the South Charleston Police Department[3], Magistrate Julie Yeager, Mayor Frank Mullens, Chief B.L. Rinehart, Assistant Chief R.L. Houck, Lt. G.E. Amburgey, Lt. A.P. Dunlap, Sgt. M.L. Greathouse, Sgt. L.S. Thomas, Sgt. M.R. Arrowwood, Cpl. R.K. Herald, Cpl. C.A. Crowder, Cpl. P.C. Rader, Officer E.R. Moyer, Officer J.M. Holley, Officer R.A. Vinyard, Officer R.P. McFarland, Officer N.W. Harden, Officer A.J. Davis and Officer J.D. Keeney.

The proposed Second Amended Complaint alleges 24 counts each (one against each named defendant) of the following causes of action: Denial of Equal Protection (Counts 1-24); Unreasonable Search and Seizure in Violation of the Fourth and Fourteenth Amendments (Counts 25-48); Violation of Reasonable Expectation of Privacy under the Fourth and Fourteenth Amendments (Counts 49-72); Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments; (Counts 73-96); Common Law Trespass (Counts 97-120); Intentional Outrageous Conduct (Counts 121-144); Conspiracy to Violate the Plaintiff's Rights Under the Fourth and Fourteenth Amendments and the West Virginia Constitution (Counts 145-168); Racial Discrimination in Violation of Title VI of the Civil Rights Act of 1964 (Count 169, alleged

---

[3]  The South Charleston Police Department is not a separate legal entity that is capable of being sued. Rather, it is merely a division or instrumentality of the City of South Charleston. *See Polk v. Town of Sophia*, 2013 WL 6195727 *4 (S.D. W. Va., Nov. 27, 2013); *Tofi v. Napier*, 2011 WL 3862118 *4 (S.D. W. Va. 2011); *see also* W. Va. Code § 29-12A-3(b) (defining a municipality). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the amendment to name this defendant would be futile.

only against the City of South Charleston); Municipal Liability (Count 170, alleged only against the City of South Charleston); Assault and Battery (Count 171, alleged only against Lt. R.T. Yeager); Denial of Due Process (Counts 172-195); and Continuing Trespass (Counts 196-219).   Furthermore, in paragraphs 863-865 of the proposed Second Amended Complaint, the plaintiff summarily lists the following "state law claims" which he alleges he is bringing against each defendant named in the proposed Second Amended Complaint:

A.    Illegal imprisonment
B.    Assault
C.    Conversion
D.    Trespass
E.    Conspiracy
F.    Intentional Outrageous Conduct
G.    Malicious Prosecution

Paragraph 865 of the proposed Second Amended Complaint also alleges that the plaintiff is attempting to bring the following "state law claims" against only the City of South Charleston:

A.    Negligent Hiring
B.    Negligent Retention
C.    Negligent Supervision
D.    Disparate treatment and penalties based on Racial Discrimination

(*Id.* at 193. ¶ 865).

The proposed Second Amended Complaint is largely premised upon the plaintiff's receipt, during discovery, of the Adkins letter (previously discussed herein), as well as daily activity logs of South Charleston Police Department employees for the time period between June 29, 2011 and July 2, 2011.   The plaintiff's Motion for Leave to Amend Complaint asserts:

Before discovery, and because of what appears to be a cover-up, Patterson could not previously plead and include those un-disclosed facts and

allegations along with the names of all the liable participating individuals. Specific named Defendants' actions were clarified in discovery and said actions resulted in the same injuries that are now properly pled. Hence, every Defendant is on notice of these claims. Additionally, Defendants are not prejudiced with this amendment as they still have the opportunity to file a responsive pleading and were likely solely responsible for delaying and prolonging discovery. The proposed Revised Second Amended Complaint does not prejudice the Defendants as it arises from the same incidents, common facts, and law. The proposed amendments to Plaintiff's Revised Second Amended Complaint will add parties and claims that are necessary and justified by the previous and aforementioned evidence uncovered during discovery.

(ECF No. 153 at 2).

On September 30, 2014, the defendants, by counsel, filed a Response to the plaintiff's Motion for Leave to Amend (ECF No. 155). The defendants contend that the amendments proposed by the plaintiff would be futile because the substance of the proposed amended claims has already been considered and those claims have been dismissed by the District Court. As noted in their Response:

In this matter, Plaintiff's *Revised Second Amended Complaint* (the proposed Complaint attached to Plaintiff's Third Motion for Leave to Amend is styled: "Revised Second Amended Complaint") asserts *inter alia*, claims of Fourth and Fourteenth Amendment violations, malicious prosecution, common law trespass, intentional outrageous conduct, conspiracy, violation of Title VI, municipal liability and assault and battery. In other words, Plaintiff has asserted effectively the same set of claims as he did in the original *Complaint*. However, with the exception of the civil trespass claim, Plaintiff's original *Complaint* and all claims contained therein were summarily dismissed.

\* \* \*

Defendants maintain that like the first instance, there are no new allegations in the proposed Amended Complaint that could materially change the outcome of the Court's prior grant of dismissal. First, as stated above, the allegations in the *Revised Second Amended Complaint* are simply a restatement of Plaintiff's claims that were decided by the Court. Second, Plaintiff's principal argument in requesting motion for leave to amend is that the "Adkins" letter is somehow helpful to his case. However, the "Adkins" letter, as stated in Defendants' Response to Plaintiff's Rule 60(b) motion, is anything but helpful to Plaintiff's case. In fact, the Adkins

12

letter states that Patterson assaulted Adkins and Patterson maintains that the letter is truthful.

Moreover, to the extent that any of Plaintiff's claims in his proposed *Revised Second Amended Complaint* are different than those asserted in Plaintiff's first Complaint, Plaintiff's Motion for Leave to Amend should likewise be denied as those claims fail to meet the federal pleading standard.  [Citing to the United States Supreme Court's decisions in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2007)].

(ECF No. 155 at 4-6).  The defendants' Response further asserts that "[e]ach Count under Plaintiff's proposed Complaint lists conclusory allegations without specific reference to factual allegations.  Thus, Plaintiff's proposed amended complaint is futile and should therefore be denied."  (*Id.* at 7).

The defendants' Response further asserts that the plaintiff's Motion for Leave to Amend Complaint should be denied because there is no available remedy for the plaintiff in this court.  The Response states:  ""Plaintiff's claims rest entirely upon the presumption that the subject property was, in fact, *his*.  This presumption is false, and therefore the claims which rest upon it must fail."  (*Id.* at 7).  The Response then generally addresses the law on the rights of tenants in common and the remedies of ejectment and partition, which are available only in the state civil court system.  (*Id.* at 7-11).  The defendants' Response further asserts that the plaintiff's Motion for Leave to Amend Complaint is not ripe because the court has not resolved the question of whether the plaintiff has raised a question of federal law.  (*Id.* at 12).[4]

On November 4, 2014, the plaintiff filed a Reply brief (ECF No. 157).  The Reply emphasizes that the Adkins letter and the South Charleston Police Department daily

---

[4]   The undersigned, however, has recommended herein that the presiding District Judge find that the jurisdictional requirements have been met both on the basis of a federal question and diversity of citizenship.

logs were not available to the plaintiff or to the court at the time of Judge Copenhaver's ruling granting summary judgment on the plaintiff's claims in his initial Complaint. (*Id.* at 1-4).  The plaintiff's Reply further asserts that the daily logs and the Adkins letter contain evidence of the defendants' "meetings, dialogue, planning and conniving movements." (*Id.* at 3-4).

Specifically, the plaintiff asserts that the Adkins letter demonstrates that, during a July 2, 2011 meeting at the police station, "defendants" agreed that they had to "do something" for Adkins, and the daily logs show that "defendants acted straight away after the agreement to do something for the Caucasian Adkins.  Defendants proceeded to immediately arrest Patterson without cause." (*Id.* at 4).  The plaintiff maintains that this evidence demonstrates a conspiracy by the defendants to fraudulently deprive him of personal properties, lawfully owned by Patterson and lawfully situated in Patterson's house which was locked, controlled and occupied by Patterson." (*Id.*)  The plaintiff also asserts that this evidence demonstrates that the defendants arranged "to divert the functions of the court in a scheme to circumvent the judicial process and deny Patterson any opportunity or chance to survive the diversions and retain Patterson's lawfully owned property" and "disregarded the provisions of the West Virginia statute, by failing to comply therewith, causing Patterson's ejection and issued fraudulent arrest warrants." (*Id.* at 5).

The plaintiff's Reply further emphasizes that his trespass and Fourth Amendment claims "rest partly upon the undisputed fact and allegation that Patterson was in exclusive possession and control of his property on July 1, 2011." (*Id.*)  The Reply further states: "Defendants do not dispute that Patterson was in possession of his house

on July 1, 2011.  Defendants' response fails to state any statutory authority for their July 1, 2011 police action."  (*Id.* at 6).  The Reply further contends:

> Patterson's Revised Complaint, ¶ 144, alleges that on July 1, 2011 Defendants ejected Patterson without due process, legal authority or probable cause.  Defendants admit they 'removed' Patterson but their reason is not supported by law and violated Patterson's rights.  On page 9 of Defendants' Response it states in part:  "Because Plaintiff refused to use the civil court system . . . these Defendants had no choice but to remove Plaintiff . . ."

(*Id.*)  The plaintiff's Reply further asserts that he was in possession and inside of the house and, thus, subject to Fourth Amendment protections.  (*Id.* at 5).  He further asserts that the defendants' actions constituted a "seizure" for Fourth Amendment purposes because the Supreme Court has held that a seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property.  (*Id.* at 6-7, citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

Finally, although the presiding District Judge previously dismissed the plaintiff's conversion claim(s) on the basis that there cannot be a conversion of real property (*see* ECF No. 40 at 10-11), the plaintiff's Reply asserts that his proposed Second Amended Complaint alleges that the defendants wrongfully assumed control, dominion and ownership of Patterson's house <u>and personal property</u>.  (*Id.* at 7).  He further asserts that he has repeatedly demanded return of his personal property, to no avail.  (*Id.*)  The plaintiff's Reply includes an accounting of the personal property that was allegedly converted and lost, totaling approximately $160,000.  (*Id.* at 7-8).  The plaintiff asserts that, based upon the claims alleged in his proposed Second Amended Complaint, he can establish sufficient facts to support plausible federal and state law claims with cognizable remedies of declaratory, injunctive and monetary relief.  (*Id.* at 8).

As noted above, the plaintiff heavily relies upon the Adkins letter to justify another amendment of his Complaint. His proposed Second Amended Complaint seeks to revive and expand on claims which have been dismissed by the presiding District Judge. Prior to filing his Motion for Leave to Amend and proposed Second Amended Complaint, the plaintiff filed a Motion for Relief from Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (hereinafter "Rule 60(b) motion"). (ECF No. 146). In that motion, the plaintiff also sought to revive all of the claims that had previously been dismissed by the court, asserting that the Adkins letter had been fraudulently concealed by the defendants and was new and material evidence that was not available at the time of the presiding District Judge's dismissal of the prior claims. (*Id.*)

On March 27, 2015, the presiding District Judge issued an Order denying the plaintiff's Rule 60(b) motion. (ECF No. 160). The rulings in that Order largely dispose of the plaintiff's arguments for amendment of his First Amended Complaint as well, at least as to the claims related to his arrests and criminal prosecutions. In particular, the presiding District Judge found as follows:

> The contents of the letter do not create any genuine dispute of material fact that would in any way undercut Judge Stanley's previous finding that the warrants for Patterson's arrests were supported by probable cause, nor does the letter in any way suggest that Officers Bailes and Lindell were motivated by any racial animus towards Patterson. Indeed, Adkins' description of Patterson's conduct on June 29, 2011 precisely echoes the allegations that led two separate Kanawha County Magistrates to conclude that probable cause existed to arrest Patterson for battery, and her account at no point mentions Patterson's race.
>
> * * *
>
> Nothing in the letter suggests that Adkins' account of the events of June 29, 2011 was false or coerced by Officer Bailes. That Lt. Yeager and Officer Bailes agreed to "do something" and took Adkins' statement -- rather than

16

> coercing her into declining to press charges as Officer Lindell allegedly did -- does not begin to suggest that Adkins' statement was concocted at their behest.  On the contrary, the letter makes clear that Adkins returned to the SCPD station on July 2, 2011 of her own volition, intent on filing charges after being previously rebuffed by Officer Lindell.

(ECF No. 160 at 7-8).

Thus, the presiding District Judge's March 27, 2015 Memorandum Opinion clearly found that nothing in the Adkins letter would change his prior rulings granting summary judgment to the defendants and dismissing the plaintiff's claims styled in the initial Complaint as false arrest, false imprisonment, malicious prosecution, abuse of process, conspiracy, and denial of equal protection (based upon race).[5]  Moreover, although not specifically addressed in Judge Copenhaver's prior Orders, to the extent that the plaintiff is seeking to revive or assert federal or state claims grounded in an alleged "malicious prosecution," courts that have addressed the issue have overwhelmingly held that entering a pre-trial diversion agreement, as the plaintiff did, does not terminate a criminal action in favor of the defendant for purposes of bringing a malicious prosecution claim, and that such claims are legally barred.  *See, e.g., Uboh v. Reno*, 141 F.3d 1000 (11th Cir. 1998); *Taylor v. Gregg*, 36 F.3d 453 (5th Cir. 1994); *Buck v. East Baton Rouge Sheriff's Office*, 2014 WL 2593852 (M.D. La., June 1, 2014).  Accordingly, amendment of the plaintiff's First Amended Complaint to pursue such claims would be futile.

---

[5]   The plaintiff has subsequently filed another Affidavit in which he, *inter alia*, categorically denies the conduct that he and his brother and son were alleged to have engaged in with Jaime Adkins and Gail Reed, which formed the basis of the criminal complaints against them.  (ECF No. 161).  To the extent that the Affidavit addresses conduct giving rise to the previously dismissed claims, the undersigned proposes that the presiding District Judge FIND that the plaintiff's self-serving contentions in the Affidavit are immaterial in light of the independent findings by two magistrate judges that there was probable cause for the plaintiff's arrests.  The plaintiff's contentions are further belied by his entry into a pre-trial diviersion agreement.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's present attempt to reassert such claims (at least as they pertain to his arrests and criminal prosecutions) through his proposed Revised Second Amended Complaint would be futile. Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the plaintiff's Motion for Leave to Amend (ECF No. 153) with regard to any claims that address or are related to the plaintiff's arrests and criminal prosecutions.

However, the proposed Second Amended Complaint also contains allegations and claims related to the entry of the property at 825 Barrett Street by certain South Charleston Police Officers on July 1, 2011, and the plaintiff's subsequent removal therefrom on that date. The undersigned will now attempt to address those allegations and claims.

### Denial of Equal Protection (Counts 1-24) and Racial Discrimination under Title VI (Count 169)

In Counts 1-24 of the plaintiff's proposed Second Amended Complaint, at least as they pertain to the alleged unlawful entry on the property and the plaintiff's removal therefrom, the plaintiff alleges that the defendants, acting under color of state law, acted in concert with one another and engaged in intentional racial discrimination, which deprived the plaintiff of his fundamental property rights and the right to be free from unlawful search and seizure on account of his race. (ECF No. 153-1 at 33-50). Furthermore, in Count 169 of his proposed Second Amended Complaint, the plaintiff alleges that, as a recipient of federal funds, the City of South Charleston is required to conduct its activities in a racially non-discriminatory manner under Title VI of the Civil Rights Act of 1964. (*Id.* at 167).

The plaintiff's proposed Second Amended Complaint contends that the defendants' conduct was racially motivated in light of the fact that Jaime Adkins, a Caucasian, was permitted back into the house at the time that the plaintiff was removed therefrom on July 1, 2011.   However, the plaintiff's allegations concerning race discrimination ignore the fact that, in addition to Jaime Adkins, the plaintiff's niece, Danaya Steiner, who is African American, and her family were also let back into the house on July 1, 2011.

The plaintiff's other allegations made in support of his race discrimination claims address conduct that either has no direct nexus to the plaintiff or that occurred years before this incident.   Such conduct should be considered too remote in time to establish a nexus to the current conduct in order to permit a reasonable trier of fact to find race discrimination or a denial of equal protection.   Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's allegations fail to state plausible claims of race discrimination or denial of equal protection based upon race. Therefore, allowing such amendment would be futile.

*Unreasonable Search and Seizure (Counts 25-48) and*
*Violation of Expectation of Privacy (Counts 49-72) and*
*Conspiracy to Violate the Plaintiff's Fourth and*
*Fourteenth Amendment Rights (Counts 145-168)*

In Counts 25-72 of the proposed Second Amended Complaint, the plaintiff alleges that the defendants' conduct violated his rights under the Fourth and Fourteenth Amendments when they entered the property without a warrant and without other lawful authority.  Specifically, the plaintiff alleges that the defendants, "acting under color of state law and in concert with one another, entered, seized and searched Patterson's house without reasonable suspicion that a violation or crime had been

19

committed or was likely to be committed, in violation of the Fourth Amendment reasonable expectation of privacy and guarantee against unreasonable searches and seizures." (ECF No. 153-1 at 51-83). These counts further allege that the Fourth Amendment claims are actionable against state actors via the Fourteenth Amendment, and that the defendants' acts were intentional, without good faith and with reckless disregard and/or callous indifference to the plaintiff's civil rights, and that such conduct was the proximate cause of the plaintiff's injuries. (*Id.*)

In Counts 145-168, the plaintiff further alleges that the defendants engaged in a conspiracy to violate his Fourth and Fourteenth Amendment rights. The plaintiff alleges that the defendants, "acting under color of state law and in concert with one another, conspired, agreed and acted in furtherance of the common scheme to eject Patterson from his house." (ECF No. 153-1 at 146-166). These allegations further state that the plaintiff's removal from the house was "initiated pursuant to an agreement among the defendants and without reasonable suspicion that a violation or crime had been committed or was likely to be committed, thus without probable cause." (*Id.*) The proposed Second Amended Complaint further alleges that his removal was "done with knowledge, forethought and malice" and "all named defendants understood the general objectives of the common scheme and agreed to do his/her part to further them." (*Id.*)

The proposed Second Amended Complaint further alleges:

These actions described above give rise to Patterson's claim pursuant to the Fourth Amendment's guarantee against unreasonable searches and seizures, applicable to the states through the Fourteenth Amendment to the Constitution of the United States, and the 42 U.S.C. § 1983, as well as their counterparts in the West Virginia Constitution. Defendants' conspiratorial acts form a causal connection, and are the proximate cause of Patterson's injury. Defendants acted without good faith, and with reckless disregard and/or callous indifference to Patterson's civil rights.

(*Id.*)

As noted previously herein, the undersigned proposes that the presiding District Judge **FIND** that these allegations are sufficient to state plausible claims under the Fourth and Fourteenth Amendments actionable under 42 U.S.C. § 1983.  However, the undersigned further proposes that the presiding District Judge **FIND** that these claims should be permitted to go forward only against the specific defendants who entered the property on July 1, 2011.  Based upon the undersigned's review of the allegations contained in the proposed Second Amended Complaint and the exhibits provided therewith, in particular the police department's daily logs, it appears that the only defendants who entered the property and removed the plaintiff on July 1, 2011 were Lt. R.T. Yeager, Sgt. L.S. Thomas and Officer R.P. McFarland.[6]  (*See* ECF No. 153-1 at 11-12, ¶¶ 53-61; Exs. 12-15).

Additionally, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has sufficiently alleged facts concerning the conduct of Magistrate Julie Yeager that could support plausible violations under the Fourth and Fourteenth Amendments.  Therefore, allowing amendment of the Complaint to assert these claims against Magistrate Julie Yeager would not be futile.  However, the undersigned further proposes that the presiding District Judge **FIND** that the proposed Second Amended Complaint fails to sufficiently allege claims against the other proposed defendants on this basis, and that further amendment would be futile.

---

[6]  As a result of the identification of these two other officers who allegedly entered the property on July 1, 2011, the undersigned believes it would be appropriate for the presiding District Judge to direct the Clerk to terminate "John Does 1-7" as defendants in this matter.

*Common Law Trespass (Counts 97-120)*

In Counts 97-120 of the proposed Second Amended Complaint, the plaintiff asserts claims of common law trespass against each of the defendants.  However, these claims repeat the allegations pled in the plaintiff's Fourth Amendment-based claims, stating as follows:

> The Defendants, acting under color of state law and in concert with one another, entered, seized and searched Patterson's house without reasonable suspicion that a violation or crime had been committed or was likely to be committed, in violation of the Fourth Amendment reasonable expectation of privacy and guarantee against unreasonable searches and seizures.  These actions give rise to Patterson's claim pursuant to the Fourth Amendment applicable to the states through the Fourteenth Amendment to the Constitution of the United States, and 42 U.S.C. § 1983, as well as their counterpart in the West Virginia Constitution.

> Defendants' acts were the proximate cause of the injuries to Patterson.  They were intentional and done in knowing violation of Patterson's legal and constitutional rights, without good faith, and with reckless disregard and/or callous indifference to Patterson's civil rights.

> On July 1, 2011, Defendants invaded Patterson's home affecting Patterson's interest in the exclusive possession of his property. Defendants' actions in the invasion were intentional.   Because of reasonable foreseeability, Defendants know or should have known that Patterson's possessory interest would be illegally stopped and denied.  As a result of Defendants' unlawful trespass and seizure, Patterson's personal and real property has sustained substantial physical damage.  Defendants are liable for the intentional invasion and seizure.  Because of Defendants' continuing trespass, Patterson is entitled to immediate injunctive relief.

(ECF No. 153-1 at 113-136).

As with the claims addressed immediately above, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff should be permitted to amend his trespass claims, but only to pursue such claims against Lt. Yeager, Sgt. Thomas, Officer McFarland and Magistrate Julie Yeager.

*Continuing Trespass (Counts 196-219) and Conversion Claim (p 193, ¶ 864C)*

In Counts 196-219, the plaintiff essentially repeats his trespass allegations in support of counts which he entitles "Continuing Trespass." (ECF No. 153-1 at 179-219). Additionally, in paragraph 864 of the proposed Amended Complaint, the plaintiff makes a conclusory statement that his allegations support a claim of conversion of his personal property that was in the house. (*Id.* at 193, ¶ 864C).

However, neither the City, nor its officials or employees, are in continued possession of the property. The plaintiff alleges that he has been threatened by the defendants with future bodily harm if he returns to the property. Such allegations are unsubstantiated and not sufficient to state a plausible claim of continuing trespass or conversion. Moreover, the plaintiff's remedy on this basis lies in the adjudication of the property ownership and possessory rights in the state court, which he has apparently refuses to undertake.

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's allegations in support of his continuing trespass and conversion claims are insufficient to state plausible claims upon which relief may be granted. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that amendment to allow such claims would be futile.

*Intentional and Outrageous Conduct (Counts 121-144)*

In Counts 121-144 of the proposed Amended Complaint, the plaintiff alleges that he "was subjected to outrageous conduct, intentionally imposed upon him by the defendant officers to humiliate and embarrass him, to wit: ejection from his house and two criminal arrests." (ECF No. 153-1 at 136-145). He further asserts that he suffered "shock, embarrassment, panic, vomiting and severe mental distress." (*Id.*)

In Syllabus Point 6 of *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982), the Supreme Court of Appeals of West Virginia (the "SCAWV") set forth the elements of an intentional infliction of emotional distress claim as "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." The circumstances in which liability for intentional infliction of emotional distress or the tort of outrage has been imposed are extremely rare, and that "firm judicial oversight is required in order to avoid losing control over the tort." *See Hines v. Hills Dept. Store,* 454 S.E.2d 385 (W. Va. 1994) and *Johnson v. Hills Dept. Store*, 488 S.E.2d 471, 476 (W. Va. 1997). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Harless*, 289 S.E.2d at 704-705, *quoting* § 46 of the *Restatement*. The standard is so stringent that it is not enough even when a defendant "acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle" a plaintiff to punitive damages in another tort claim. *Id.*

> In evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether the conduct may reasonably be considered outrageous is a legal question . . .

Syl. Pt. 4, *Travis v. Alcon Lab., Inc.*, 504 S.E.2d 419 (W. Va. 1998). The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's allegations fall

woefully short of meeting this stringent standard.   Accordingly, the undersigned proposes that the presiding District Judge **FIND** that amendment to allow the addition of such a claim would be futile.

*Denial of Due Process (Counts 173-195)*

In Counts 145-168 of the proposed Second Amended Complaint, the plaintiff alleges that each defendant, "clothed with the authority of state law, implemented and executed policies, ordinances, regulations and decisions officially adopted and promulgated by Defendants, which resulted in Defendants' customs being the "moving force" behind Patterson's alleged deprivations of due process under the Fourth and Fourteenth amendments to the United States and West Virginia Constitutions."  (ECF No. 153-1 at 168-178).

The plaintiff further specifically alleges a claim that the City of South Charleston should be held liable for the conduct of its officers on the basis that the alleged constitutional deprivations were caused by the implementation of customs, policies or official acts of the City and the deliberate indifference of the City to the unreasonable risk of such constitutional deprivations.  (*Id.* at 167).  The liability of a municipality under section 1983 for the actions of its officers and employees cannot be premised on the doctrine of *respondeat superior.  See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  In other words, the City "cannot be held liable *solely* because it employs a tortfeasor . . ." *Id.*   Rather, a plaintiff seeking to hold a local government defendant liable must show that the execution of a policy or custom of that municipality caused or "was a moving force behind" the violation of the plaintiff's constitutional rights.

"[T]he touchstone of the § 1983 action against a governmental body is an allegation that the official policy is responsible for a deprivation of rights protected by

25

the Constitution," but claims against municipalities may also be brought based upon "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-691. The plaintiff must "adequately plead . . . the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [the plaintiff's] rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

The plaintiff's proposed Second Amended Complaint states in a vague and conclusory manner that the City has "permit[ed] police officers to engage in law enforcement contacts without supervision, fail[ed] to adequately train, supervise and discipline its police officers regarding reasonable suspicion, probable cause for an arrest, lawful detention, lawful detention and the proper use of force to effect an investigative detention and/or arrest." (*Id.* at 167). In light of the dismissal of the claims related to the plaintiff's arrests, these allegations appear to be inapposite to the remaining claims.

The plaintiff also vaguely alleges that the City "allows for the routine mistreatment and constitutional deprivations of citizens like Patterson, based on race." (*Id.* at 23). However, as addressed previously herein, the plaintiff's proposed Second Amended Complaint fails to sufficiently state facts demonstrating racial discrimination by the defendant in this case.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not adequately pled the existence of an official policy or custom that is fairly attributable to the City and that was a proximate cause of the plaintiff's alleged injuries under his remaining constitutional claims. Therefore, amendment to

allow the plaintiff to assert such a claim against the City of South Charleston would be futile.

<u>*Assault and Battery (Count 171)*</u>

In Count 172 of the proposed Amended Complaint, the plaintiff alleges that "defendant L.T. Yeager's actions constituted an unlawful touching of Patterson and caused [] Patterson to be in imminent fear for his life, and fear of bodily injury." (ECF No. 153-1 at 168). This claim is based upon defendant Yeager's conduct while in the house at 825 Barrett Street on July 1, 2011. Specifically, the plaintiff alleges that:

> Yeager yelled at Patterson, then ordered Patterson to give his niece, Danaya Steiner, the key to Patterson's house and "Get out now!" Lt. Yeager's face was red and he appeared to be angry. Yelling loudly in a high pitched voice and placing his hand on his gun, Lt. Yeager told Patterson "Don't come back."

(*Id.* at 2).

Under West Virginia law, "[a]n actor is subject to liability to another for battery if (a)he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *W. Va. Fire & Cas. Co. v. Stanley*, [216 W. Va. 40, 52 (2004) – get S.E.2d cite]. An assault under West Virginia law holds that "[a]n actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Id.*

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's allegations are sufficient to state a plausible state law claim of civil assault against Lt. Yeager, and that the plaintiff should be permitted to amend his Complaint to

pursue the assault claim.  However, because there is no evidence that Lt. Yeager actually engaged in any physical contact with the plaintiff, the undersigned proposes that the presiding District Judge **FIND** that amendment to add a state law battery claim would be futile.

### *Negligence Claims Against the City of South Charleston*

Turning to the state law claim pled against the City of South Charleston, the plaintiff summarily claims that the City engaged in negligent hiring, negligent retention, and negligent supervision.[7]  The plaintiff offers no specific factual allegations concerning any of these claims.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that such claims are vague, conclusory and fail to state plausible claims against the City and that such amendments would be futile.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the plaintiff's Motion for Leave to Amend Complaint (ECF No. 153) to the extent that the plaintiff shall be permitted to amend his First Amended Complaint to allege claims of civil trespass, violation of the plaintiff's Fourth and Fourteenth Amendment rights, and conspiracy to violate the plaintiff's Fourth and Fourteenth Amendments, against defendants Lt. R.T. Yeager, Sgt. L.S. Thomas, Officer R.P. McFarland, and Magistrate Julie Yeager, based upon the entry onto the property at 825 Barrett Street in South Charleston, West Virginia on July 1, 2011, and also to allege a claim of civil assault under West Virginia Law against Lt. R.T. Yeager, but to otherwise **DENY** that motion and not permit the addition of any other claims or defendants.

---

[7]  The plaintiff also alleges that the City engaged in "disparate treatment and penalties based upon Race Discrimination."  (ECF No. 153-1 at 193, ¶ 865D).  Such alleged conduct is intentional, not negligent, and is encompassed in the discussion of the plaintiff's equal protection/race discrimination claims addressed previously herein.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on Judge Copenhaver.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

April 24, 2015

Dwane L. Tinsley
United States Magistrate Judge