```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

WAYNE PATTERSON

       Plaintiff,

v.                                          Civil Action No. 2:12-01964

MAGISTRATE JULIE YEAGER, individually,
LIEUTENANT R.T. YEAGER,
individually and in his official capacity,
SERGEANT L.S. THOMAS,
individually and in his official capacity,
and OFFICER R.P. MCFARLAND,
individually and in his official capacity,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is the motion to reconsider[1] filed by plaintiff Wayne Patterson on November 9, 2015, to which defendant Magistrate Julie Yeager filed a response in opposition on November 10, 2015.

---

[1] Plaintiff's motion refers to the court's "November 3, 2015[,] Order." The order entered on November 3 addresses the deposition of Lieutenant Yeager. It is clear from the substance of the pending motion that plaintiff seeks reconsideration of the order addressing the deposition of Magistrate Yeager. That order was entered on November 4, 2015.

I.

In the pending motion, plaintiff asks the court to reconsider its order of November 4, 2015, ECF No. 226. That order granted Magistrate Yeager's motion for a protective order and denied plaintiff's motion to compel further discovery of her.

Plaintiff asserts that he is "not being permitted to ask one of the two alleged conspirators if they agreed with the other alleged conspirator's actions," and seeks an order "permitting [him] to complete the line of questions regarding agreement" between the alleged conspirators. Magistrate Yeager maintains that the information sought is protected by the deliberative process privilege and, further, that the questions were irrelevant to the single count of conspiracy alleged against her.

II.

A.

Rule 54(b) states, in relevant part, that an interlocutory, non-dispositive "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b). The power to grant or

deny reconsideration of an interlocutory order is committed to the discretion of the district court. See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983) (observing that "every order short of a final decree is subject to reopening at the discretion of the district judge"); see also Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003) (citing Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991)).

B.

As explained by the court more fully in its previous order, plaintiff was not entitled to receive answers to each of three disputed questions. Two of those questions[2] were hypothetical, and the information sought was irrelevant to the conspiracy claim alleged against Magistrate Yeager. With

---

[2] Plaintiff: Okay. Okay. Under the Fourth Amendment, under the right of search and seizure, the search and seizure law, would your -- would a police officer have the right to enter a person's house, move them without cause?

. . .

Plaintiff: Magistrate Yeager, if your brother and people that were under his command removed a person from their home, which would be me, who was in possession of that home, would that be against the Fourth Amendment?

3

respect to those two questions, the court adheres to its earlier ruling.

### C.

The third disputed question is somewhat more complicated. It came about as follows:

> Plaintiff: Okay. Okay. So you discovered that he had removed us from the house after we came to your court [to be arraigned], after we had been arrested, after I -- my brother and I had been arrested.
>
> Yeager: Yes. That's what I remember.
>
> Plaintiff: Okay. Well -- okay. Your brother having removed me and my son from the home, based on what you know, did you agree with what he had done?

With respect to this question, too, the court adheres to its earlier ruling. Nevertheless, the court pauses to take further note of the context in which the challenged question was asked.

Early in Magistrate Yeager's deposition, the following exchange occurred:

> Plaintiff: Okay. Okay. Well, Magistrate Yeager, when did you learn that your brother had removed me and my brother and son from the house at Barrett Street?
>
> Yeager: I don't even -- I think the evening that I was -- I think the Saturday night that they had arrested you and brought you in for arraignment, I think that's the first I had learned of it.
>
> Plaintiff: So you didn't know that your brother had removed us from the house.

4

> **Yeager: No. All I know is that he called to see if there were any orders in effect, and I recognized your name and mentioned that I had met you a couple nights prior to that but, no, I don't know -- I didn't know anything about that.**

**Later in the deposition, Magistrate Yeager reiterated her testimony on that point as follows:**

> **Yeager: Mr. Patterson, I recall -- I recall knowing that you had been removed from the home that evening when I granted the protective order because of the allegations that were written in the petition for [the] protective order, but I do not believe, sir, that I knew that it was my brother that had removed you from the home. I think I just knew that South Charleston police had asked you to vacate the residence prior to your arrest, but I do not -- I don't specifically remember that it was my brother that had removed you. . . . I did know you were no longer in the home, but I do not remember knowing that it was my brother that had removed you.**

It is clear from this testimony that Magistrate Yeager claims not to have learned that plaintiff had been removed from the Barrett Street house until plaintiff's arraignment on July 2, 2011, over which she presided.[3] It is also apparent that Magistrate Yeager claims not to have known, at the time of plaintiff's arraignment, that it was Lt. Yeager in particular

---

[3] Plaintiff was arraigned on July 2, 2011, on charges of battery arising from an incident that allegedly took place on June 29, 2011, and which was reported to police earlier in the day on July 2, 2011. The same day -- July 2, 2011 -- Magistrate Yeager issued against plaintiff the protective order mentioned in the excerpt above. Plaintiff was removed from the Barrett Street house at some point in the evening of July 1, 2011.

5

who effected the removal. Viewed in this context, the disputed question thus asks whether Magistrate Yeager "agree[d]" with something that had already taken place, rather than whether she conspired with Lt. Yeager to effect it in the first instance.

As noted in the court's November 4 order, Federal Rule of Civil Procedure 26 provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Information is "relevant" if it "bears on, or . . . reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350 (1978). Put another way, information that is "germane to the subject matter of the pending action" usually is discoverable. Ralston Purina Co. v. McFarland, 550 F.2d 967, 973 (4th Cir. 1977).

The complaint alleges a single count of conspiracy against Magistrate Yeager. In West Virginia, "[a] civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Syl. Pt. 8, Dunn v. Rockwell, 225 W. Va. 43 (2009).

6

Case 2:12-cv-01964 Document 233 Filed 11/12/15 Page 7 of 8 PageID #: 3225

Whether Magistrate Yeager was involved in what happened -- whether she was involved in "a combination . . . to accomplish an unlawful purpose" -- clearly is relevant to the conspiracy claim. Plaintiff was able to, and did, ask a number of questions on that issue. He properly received answers to those questions.

But whether, once she learned about it after the fact, Magistrate Yeager "agree[d]" with plaintiff's removal is irrelevant to the conspiracy claim. As established above, she claims not to have known that her brother participated in plaintiff's removal. Her opinion as to whether plaintiff's removal was proper, or whether she "agree[d]" with it, does not make a conspiracy between her and Lt. Yeager more or less likely, and is not germane to the single count of conspiracy alleged against her. Consequently, plaintiff was not entitled to an answer to this question.

III.

For the foregoing reasons, it is ORDERED that plaintiff's motion to reconsider the court's November 4, 2015, order be, and it hereby is, denied.

7

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: November 12, 2015

John T. Copenhaver, Jr.
United States District Judge